Thomas A. Myers (State Bar No. 176008)
Jonathan M. Eisenberg (State Bar No. 184162)
Conrad V. Sison (State Bar No. 217197)
AIDS HEALTHCARE FOUNDATION
6255 West Sunset Boulevard, 21st Floor
Los Angeles, CA 90028-7422
Telephone: (323) 860-5200
Facsimile: (323) 467-8450
Email: jonathan.eisenberg@ahf.org

Attorneys for Plaintiffs
SHAWN JENKINS and AIDS HEALTHCARE FOUNDATION

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN JENKINS and AIDS HEALTHCARE FOUNDATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES POSTAL SERVICE, LOUIS DeJOY, in his official capacity as United States Postmaster General and JEREMIE SIX, in his official capacity as United States Postmaster of Los Angeles,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (39 U.S.C. § 101(e))**<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. Plaintiff AIDS HEALTHCARE FOUNDATION's ("AHF") mission is to rid the world of HIV/AIDS through a network of programs and services, including providing affordable housing. AHF, a California non-profit organization doing certain business as "Healthy Housing Foundation" ("HHF"), operates multiple multi-unit housing facilities, many in the Skid Row neighborhood of the City of Los Angeles,

California.  Skid Row contains one of the largest populations of unhoused people in the United States.

2. The multi-unit housing facilities operated by AHF consist primarily of single-room-occupancy residential hotels ("SROs").  AHF's SRO properties include the Madison Hotel, located at 423 E. 7th Street (the "Madison"); the Baltimore Hotel ("Baltimore"), located at 501 S. Los Angeles Street; and the King Edward Hotel ("King Edward"), located at 121 E. 5th Street, all in the heart of Skid Row.

3. African Americans represent the largest percentage population of Skid Row, where most SROs are concentrated.  Moreover, compared to surrounding areas of Los Angeles, Skid Row residents—with a median income of around $11,000 annually—are of disproportionately low income.

4. AHF leases SRO rooms as tenants' primary and permanent residences. The rooms are not available on a daily or weekly basis.

5. AHF provides housing units at deliberately low monthly rents that are affordable to people of very low incomes, and/or who suffer from chronic health conditions, such as HIV/AIDS, who might otherwise be unhoused.  The rents charged by AHF are typically under market, usually between $300 and $650 per month.  In this way, AHF provides stable and safe housing to people who would otherwise simply not have it.  AHF's purpose is to help people avoid having to live on the streets, and instead to provide people with basic, decent, affordable, permanent housing.

6. Many of Skid Row's SROs, including AHF's Baltimore, King Edward, and Madison Hotels, are over a century old.  Originally and for many decades afterward, SROs operated as temporary-stay hotels, not as primary residences. Most of the people who stayed at SROs were, in essence, transient guests.

7. To each SRO, Defendant UNITED STATES POSTAL SERVICE ("USPS") had long delivered all mail in a single bundle each day (except Sunday). The SRO's employees sorted the mail and distributed each piece to the associated

guest, by placing the mail in the guest's assigned mail slot, which was usually open-air and behind the reception desk accessible to the guest upon request.

8. Today, however, SROs serve as affordable housing for low-income residents, seniors, and people moving out of homelessness. Indeed, many, if not most, of Skid Row's SROs now function as primary residences for people, including all SRO properties owned by AHF.

9. Despite SROs' status as the permanent residence for hundreds of AHF tenants, the USPS arbitrarily has chosen to classify these buildings as not permanent housing but rather hotels for transient guests. Therefore, to each SRO, including the Madison, Baltimore and King Edward, the USPS continues to deliver all residents' mail in a single bundle each day.

10. The USPS refuses to distribute the mail to individual residents at these buildings, despite AHF's installation and provision—for all tenants—of locking mail receptacles compliant with all USPS standards. In refusing to do so, the USPS impermissibly delegates to AHF and similarly-situated SRO employees, including Plaintiff SHAWN JENKINS[1] ("JENKINS"), the task of sorting the mail and distributing each piece to its intended recipient.

11. The U.S. Congress has mandated that "[i]n determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail." 39 U.S.C. §101(e).

12. Plaintiffs bring this lawsuit to require the USPS to discharge its statutory obligation to "give the highest consideration to the requirement for the most expeditious… transportation and delivery of important letter mail," as mandated by 39 U.S.C. §101(e). The USPS' refusal to distribute the mail to individual SRO residents into available locking mail receptacles—one assigned to each resident—is arbitrary,

---

[1] JENKINS is a Front Desk Clerk at the Madison.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

capricious and constitutes a violation of this federal statute.  Judicial relief is necessary to ensure that the USPS implements procedures to ensure the prompt and reliable delivery of mail to SRO residents, as required by 39 U.S.C. § 101(e).

13.   Furthermore, the USPS's policy and practice of refusing to deliver mail individually to SRO residents—who are predominantly non-white and African American—constitutes unlawful discrimination in violation of the Due Process Clause under the Fifth Amendment of the United States Constitution which requires the United States government and its agencies to practice equal protection.

## II.   JURISDICTION AND VENUE

14.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1346 (civil action against the United States), 39 U.S.C. § 401 (authorizing suits against the Postal Service), and 39 U.S.C. § 409 (suits by and against the Postal Service).  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201–02 and its equitable powers.

15.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(2), (e)(1)(C) and 39 U.S.C. § 409, because this is the judicial district in which Plaintiffs JENKINS and AHF reside, and this action seeks relief against agencies and/or officers of the United States.

## III.   PARTIES

16.   Plaintiff JENKINS is an African American employee of AHF and a resident of the Madison Hotel, an SRO property purchased by AHF in 2017 and located at 423 E. 7th Street, Los Angeles, California 90014.

17.   Plaintiff AHF is an IRC Section 501(c)(3) nonprofit organization, and a California non-profit public-benefit corporation, based in Los Angeles.  Founded in 1987, AHF is the largest non-governmental provider of HIV/AIDS medical care in the world.  AHF provides cutting-edge medicine and advocacy to over 1,900,000 people in

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

45 countries.  AHF is operational in 45 countries and 16 U.S. states (plus the District of Columbia and Puerto Rico).

18.   Defendant USPS is "an independent establishment of the executive branch" of the U.S. government under 39 U.S.C. § 201, and bears responsibility, in whole or in part, for the acts complained of in this Complaint.

19.   Defendant LOUIS DeJOY ("DeJOY") is the U.S. Postmaster General and bears responsibility, in whole or in part, for the acts complained of in this Complaint. DeJOY is sued in his official capacity.

20.   Defendant JEREMIE SIX ("SIX") is the U.S. Postmaster of the City of Los Angeles.  Under 39 C.F.R. § 222.1(a), SIX has been authorized by the U.S. Postmaster General to exercise any function vested in the Postal Service, and bears primary responsibility for the acts complained of in this Complaint.  SIX is sued in his official capacity.

## IV.   STATUTORY BACKGROUND

21.   The U.S. Constitution empowers Congress to "establish Post Offices and post Roads." U.S. Const., art. I, § 8, cl. 7. In 1789, Congress established the first Post Office under the Constitution and made the Postmaster General subject to the President's direction. U.S. Postal Serv., The United States Postal Service: An American History 1, 4 (2020), https://about.usps.com/publications/pub100.pdf.

22.   The Postal Service has played "a vital yet largely unappreciated role in the development of" the United States. *U.S. Postal Serv. v. Council of Greenburgh Civic Assocs.*, 453 U.S. 114, 121 (1981).  During the early years of this country's development, "the Post Office was to many citizens situated across the country the most visible symbol of national unity." *Id.* at 122. Since its beginnings in the pre-Revolutionary period, the Postal Service "has become the nation's oldest and largest public business*." U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd*., 540 U.S. 736, 739 (2004) (citations and quotations omitted).

23. In 1970, Congress passed the Postal Reorganization Act (the "PRA"), see Pub. L. No. 91-375, 84 Stat. 719, in large part to "convert the Post Office Department into an independent establishment in the Executive Branch of the Government freed from direct political pressures." H.R. Rep. No. 91-1104, at 1 (1970) (Conf. Rep.), as reprinted in 1970 U.S.C.C.A.N. 3649, 3650. The USPS operates under the direction of a Board of Governors, with the Postmaster General as its chief executive officer. *See* 39 C.F.R. § 1.1.

24. The PRA renamed the Post Office Department the "U.S. Postal Service," restructured its operations, removed it from the Cabinet to ensure its political independence, provided that the Postmaster General would be appointed by a newly-established Board of Governors rather than the President, and stated it had the power "to sue and be sued in its official name." 39 U.S.C. § 401(a). The PRA provides that "[t]he United States Postal Service shall be operated as a basic and fundamental service provided to the people by the Government of the United States, authorized by the Constitution, created by Act of Congress, and supported by the people." *Id.* § 101(a).

25. The PRA further affirms that the Postal Service's "basic function" is "to bind the Nation together through the personal, educational, literary, and business correspondence of the people." *Id*. To do so, the Postal Service "shall provide prompt, reliable and efficient services to patrons in all areas and shall render postal services to all communities." *Id.*

26. Congress has directed that, "[i]n determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail." *Id.* §101(e). The USPS is tasked with "develop[ing] and promot[ing] adequate and efficient postal services." *Id.* §101(e).

27. The USPS operates around the clock to process and deliver mail via a highly integrated and complex system through which an average of 425 million pieces of mail move every day. U.S. Postal Serv., Fun Facts, 1 Day in the Postal Service,

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

https://facts.usps.com/oneday/. The USPS delivers to more than 157 million residential and business addresses daily with close to 1 million new delivery points added each year. *See* https://about.usps.com/what-we-are-doing/current-initiatives/delivery-growth-management/residential-delivery.htm.

28. The Postal Service touches the lives of virtually all people in the United States. Notably, 18 percent of Americans, and 40 percent of senior citizens, pay their bills via the mail. Nearly 20 percent of Americans who receive tax refunds do so through the mail. The Department of Veterans Affairs fills about 80 percent of veterans' prescriptions by mail, sending 120 million prescriptions a year. Every day, more than 330,000 veterans receive a package of prescriptions in the mail. More than half of the people who receive medication by mail are over the age of 65 years. In 2020, the Postal Service delivered approximately 543 million pieces of election mail, including 135 million ballots, allowing millions of Americans to vote in local, state, and national elections. U.S. Postal Serv., FY 2021 Annual Report to Congress, at 22-23.

29. The PRA provides that it "shall be the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1).

30. The USPS Postal Operations Manual (POM) sets forth the policies, regulations, and procedures of the USPS governing mail collection, processing, transportation, delivery, and vehicle operations. Section 631.1 of the Postal Operations Manual ("POM"), describing the USPS' "Modes of Delivery" provides:

> The Postal Service-approved modes of delivery available for all existing delivery points, including newly established and extensions of delivery points, are in 631.24. Centralized delivery is the preferred mode of delivery for all new residential and commercial developments. Curbside, sidewalk delivery, and door modes are generally not available for new delivery points, with very rare exceptions, as determined by the Postal Service in its sole discretion, on a case-by-case basis. The characteristics of the area to be served and the methods deemed necessary to provide adequate service by the Postal Service are described in greater detail throughout this section.

*See* §631.54, POM, Issue 9, July 2002 (Updated With Revisions Through April 30, 2019).

31. Section 631.2 of the POM establishes Centralized Delivery as the "Preferred Mode" of mail delivery, and provides:

> Centralized delivery service is the preferred mode of delivery and may be provided to call windows, horizontal locked mail receptacles, cluster box units (CBUs), wall-mounted receptacles, or mechanical conveyors (mechanical conveyors are only for high-rise and multiple-tenant buildings, and only if certain conditions are met; consult your postmaster for details).
>
> a. Delivery requirements: CBUs and USPS STD 4C (wall-mounted) equipment may be approved for use at one or more centralized delivery points in a residential housing community or business location. The local postal manager or District designees must approve the mailbox sites and type of equipment. Boxes must be safely located so that customers are not required to travel an unreasonable distance to obtain their mail and to provide sufficient access to mailbox locations. Normally, it is appropriate for the receptacle to be within one block of the residence.
>
> b. Centralized delivery addresses: Centralized delivery mail receptacles (including USPS STD 4C equipment and CBUs, delivery centers, and postal centers) must be identified by the same addresses as the dwellings for which they serve as mail receptacles. The respective, conforming addresses should be displayed inside the boxes and visible only to the carrier and customer when accessing that receptacle. USPS does not assign addresses; however, the sequential ordering of any centralized delivery equipment is subject to USPS approval for operational efficiency and to accommodate special circumstances or requests for hardship delivery. For security or privacy, mailer associations or customer groups may use another alphanumeric identification system on the outside of receptacles that is not part of, or used in, the mailing address.

*See id.,* §631.2.

32. Section 611.1 of the POM sets forth the conditions governing delivery, refusal, and return of mail, and provides:

> Delivery to Addressee. **The addressee may control delivery of his or her mail.** In the absence of a contrary order, **the mail is delivered as addressed.** Mail addressed to several persons may be delivered to any one of them.

*See id.,* §611.1 (emphasis added).

33. Section 615.2 of the POM governs mail addressed to persons at hotels, schools, and similar places, and provides:

> Mail addressed to persons at hotels, schools, and similar places is delivered to the hotel or school. If the addressee is no longer at that address, the mail is

redirected to his or her current address by the hotel or school. If the forwarding address is unknown, the mail is returned to the Post Office.

*See id.,* §615.2.

34. The terms "hotel" and "hotels" are not defined in the POM.

35. Section 631.4 of the POM describing options for delivery of mail at "Residential Housing (Except Apartment Houses and Transient Mobile or Trailer Homes)" provides:

> The available options for residential areas, aside from apartment houses, transient mobile or trailer homes, colleges and universities, and other sites are covered under part 615. Delivery mode options are constrained by USPS policies and procedures, in light of the characteristics of the area to be served and the methods needed to provide adequate service. Centralized delivery is the preferred mode for new delivery points. Curbside, sidewalk delivery, and door modes are generally not available for new delivery points, with very rare exceptions, as determined by the Postal Service, in its sole discretion, on a case-by-case basis (see 631.1).

*See id.,* §631.4.

36. Section 631.54 of the POM, applicable to "Apartment Houses" provides:

> Delivery of mail to individual boxes in a **residential building containing apartments or units occupied by different addressees** is contingent upon USPS concluding the following requirements are met:
>
> a. The **building contains three or more units** (above, below, or behind — not side by side) with:
>
> (1) A **common building entrance** such as a door, a passageway, or stairs; and
>
> (2) **A common street address** (some part of the address is shared) approved by local or municipal authorities.
>
> b. **The installation and maintenance of mail receptacles are approved by the Postal Service**.
>
> c. **Each apartment is provided one box**, including that of any resident manager or janitor, unless the management has arranged for mail to be delivered at the office or desk for distribution by its employees.
>
> d. **The grouping of the boxes for the building is at a single point readily accessible to the carrier**.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Note: The tenant's correct mailing address is the address of the entrance at which the mail receptacles are located, and should include the apartment number or designated mailbox number.

*See id.,* §631.54 (emphasis added).

37. Furthermore, in 2007, the California Legislature enacted a law, codified at California Health and Safety Code section 17958.3, stating, in part, that "[a]ll residential hotels […] shall provide a locking mail receptacle for each residential unit, consistent with the applicable standards for apartment housing mail receptacles in the United States Postal Service Domestic Mail Manual." In the same bill (California Assembly Bill No. 607), the California Legislature amended California Civil Code section 1941.1, the statute establishing habitability standards for human dwellings, to provide that a residential hotel is uninhabitable if it substantially lacks "a locking mail receptacle for each residential unit."

38. AHF has installed rows of individually locking mailboxes, one for each room, for all tenants at AHF's SRO properties. These locking mailboxes comply with all relevant USPS "standards for apartment housing mail receptacles in the United States Postal Service Domestic Mail Manual."

39. The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Supreme Court has determined that "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976).

40. For purposes of equal protection claims, strict scrutiny is applied when legislative classification rests on inherently suspect characteristic, such as race, religion or alienage, or trammels fundamental personal rights. U.S.C.A. Const.Amends. 5, 14

41. Despite the foregoing statutes and regulations, as well as the availability of locking mail receptacles compliant with all USPS standards for each resident of

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

AHF's SRO properties, the USPS—under the direction of SIX and DeJOY—still refuses to distribute the mail to individual residents' mailboxes.

## V. FACTUAL AND PROCEDURAL BACKGROUND

### A. The USPS Fails to Give the Highest Consideration to the Collection, Transportation and Delivery of SRO Residents' Mail.

42. While each SRO has a common street address (423 E. 7th Street, for example), each SRO resident has a different and unique address associated with the specific unit he or she occupies, *e.g.*, 423 E. 7th Street, Unit 401, Los Angeles, California 90014. Nonetheless, the USPS treats each of AHF's SRO properties as a single address, and thus delivers all the mail for all the residents who live in separate designated units in a single bundle.

43. With the goal of providing residents their mail as soon as possible, AHF's employees, including JENKINS—whose responsibilities include sorting through each mail bundle as it is delivered each day—deposit tenants' mail into their individual locking mail receptacles. Plaintiffs deliver the mail the day that it comes, other than Saturdays, because there is no staff available to sort the mail on that day.

44. Many tenants at AHF's SRO properties receive via U.S. mail checks provided pursuant to various forms of public assistance, including, but not limited to, Supplemental Security Income (SSI), General Assistance (GA), Social Security, Department of Veterans' Affairs (VA) benefits, unemployment insurance compensation and workers' compensation.

45. Because most of the tenants at AHF's SRO properties are of very low income, any delay in their receipt of public assistance funds would have serious personal and financial consequences.

46. Furthermore, many of the tenants at AHF's SRO properties suffer from chronic illnesses, including HIV/AIDS, and receive life-sustaining prescription medications in the mail. Any issues or delays in connection with the delivery of these

prescription medications could result in potential pain, exacerbation of existing medical conditions, further illness, and even death.

47. In addition, during election cycles, on information and belief, many tenants at AHF's SRO properties participate in mail-in voting, and both receive and transmit their completed ballots via the mail.

48. In arbitrarily refusing to distribute the mail to individual residents of AHF's SRO properties at their individually locking mailboxes, the USPS has failed to "give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail" as mandated by 39 U.S.C. § 101(e).

**B. USPS' Refusal to Deliver SRO Residents Violates their Equal Protection Rights.**

49. Of the 654 tenants at AHF's SRO properties, a disproportionate majority are non-white and African American, including JENKINS.

50. The human population of Skid Row where most SROs are concentrated is 58% African American (https://skidrowpeoplesmarket.org/about-3), whereas the City of Los Angeles is 8.6% African American (https://www.census.gov/quickfacts/fact/table/losangelescitycalifornia/PST045222) and the County of Los Angeles is 9% African American (https://www.census.gov/quickfacts/fact/table/losangelescountycalifornia/HSG010222).

51. The USPS's policy and practice of refusing to deliver mail individually to SRO residents constitutes unlawful discrimination by race. It is motivated by prejudice towards non-white, African American residents of SROs and does not further any conceivable legitimate government interest.

**C. AHF Faces Potential Legal Liability Arising from the USPS' Refusal to Deliver SRO Residents' Mail in Locking Mail Receptacles.**

52. Premised on alleged habitability concerns arising, in part, from the delivery of mail at the Madison, a Madison resident, Tammy Davis ("Davis"), in 2020 filed a

putative class action in Los Angeles County Superior Court ("*Davis* class action case," Case No. 20STCV08627) against AHF for supposedly violating the mailbox law.

53. By the class action, per AHF's understanding, Davis seeks for herself and all other Madison residents' statutory damages for the alleged statutory violation, as well as compensatory damages and punitive damages for the supposed consequences—misdirected, lost, open, or stolen mail. The lawsuit is ongoing, with the possibility of liability attaching to AHF based on Davis' allegations.

### D. AHF's May 24, 2023 Federal Tort Claims Act Claim.

54. Beginning with AHF's purchase of the Madison in 2017, AHF has made numerous direct requests to the USPS to deliver residents' mail into their individual locking mailboxes. The USPS has repeatedly refused AHF's requests and continues to deliver residents' mail in a single bundle each day.

55. On May 24, 2023, AHF filed—via certified U.S. mail—with the USPS a Federal Tort Claims Act claim premised on the facts alleged herein.

56. As of the date of filing of the Complaint, AHF has not received any response from the USPS regarding its May 24, 2023 claim.

### FIRST CAUSE OF ACTION

(Non-statutory review of unlawful agency action that is

arbitrary, capricious, and not in accordance with statutory requirements)

57. Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

58. Plaintiffs have a non-statutory right of action to have enjoined and declared unlawful official action that is ultra vires and unlawful.

59. Sections 631.1 and 631.2 of the POM both establish "Centralized Delivery" via "call windows, horizontal locked mail receptacles, cluster box units (CBUs), wall-mounted receptacles" as the preferred mode of residential mail delivery.

60. Section 611.1 of the POM further provides that "the mail is delivered as addressed."

61. AHF's SRO properties possess all the characteristics of "Apartment Houses" as described by § 631.54 of the POM, including "units occupied by different addressees," are buildings containing "three or more units," have a "common building entrance," have a "common street address (some part of the address is shared)," the "installation and maintenance of mail receptacles…approved by the Postal Service" with "each apartment…provided one box," and the "grouping of the boxes for the building is at a single point readily accessible to the carrier."

62. Despite the absence of a definition for "hotels" in the POM and AHF's SRO properties encompassing all the characteristics of "Apartment Houses" under §631.54, the USPS has arbitrarily chosen to classify all SROs as hotels for transient guests. Based on its own classification, the USPS refuses to deliver the mail to the permanent residents of AHF's SRO properties at their individually locking mailboxes, choosing instead to deliver all residents' mail in a single bundle each day.

63. The USPS cannot justify its policy and practice of refusing to deliver mail individually to SRO residents, while the USPS delivers mail individually to residents of multi-unit "Apartment Houses." Any claimed distinction between SROs, used as primary residences, and apartment buildings is arbitrary and capricious, devoid of adequate analysis or support.

64. Through its arbitrary treatment of mail addressed to permanent residents of SRO properties, the USPS has failed to give the "highest consideration" to the "delivery of important letter mail," including mail addressed to permanent residents of SROs as required by 39 U.S.C. § 101(e) and in contravention of the regulations set forth in USPS' own Postal Operations Manual.

65. Similarly, by failing to implement policies mandating procedures that are necessary to ensure the prompt and reliable delivery of this mail, USPS has violated 39 U.S.C. § 101(e), which mandates: "In determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most

expeditious collection, transportation, and delivery of important letter mail." 39 U.S.C. § 101(e).

66. In light of the mandate of section 101(e), the USPS POM, as well as the California Legislature's enactment of Health and Safety Code section 17958.3, the USPS' refusal to distribute the mail to individual SRO residents is unreasonable, arbitrary, capricious, or in violation of law.

## SECOND CAUSE OF ACTION

(Mandamus to enforce 39 U.S.C. § 101(e))

67. Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

68. Plaintiffs have a statutory right under 39 U.S.C. § 101(e) to have USPS provide "highest consideration" to the "requirement for the most expeditious collection, transportation, and delivery of" their "important letter mail."

69. Defendants have a nondiscretionary duty under 39 U.S.C. § 101(e) to provide "highest consideration" to the delivery of "important letter mail" to the members of the public, including Plaintiffs.

70. In light of the mandate of section 101(e), the USPS POM, as well as the California Legislature's enactment of Health and Safety Code section 17958.3, the USPS' refusal to distribute the mail to individual SRO residents is unreasonable, arbitrary, capricious, or in violation of law.

71. The USPS cannot justify its policy and practice of refusing to deliver mail individually to SRO residents, while the USPS delivers mail individually to residents of multi-unit "Apartment Houses." Any claimed distinction between SROs, used as primary residences, and apartment buildings is arbitrary and capricious, devoid of adequate analysis or support.

72. Defendants' failure to follow the procedures required by 39 U.S.C. § 101(e) warrants relief in the nature of mandamus pursuant to 28 U.S.C. § 1361 as no other adequate remedy is available to Plaintiffs enjoin Defendants' unlawful action and

1  compel action required of Defendants by law.  Defendants should be required to
2  revoke the policy of treating SROs differently and worse than multi-unit apartment
3  buildings.  Alternatively, Defendant should be required to abide by a policy by which
4  the USPS treats SROs and multi-unit apartment buildings the same.

5      73.    Plaintiffs have been and will continue to be harmed by Defendants'
6  unlawful actions because delays to mail to its members as a result of these actions are
7  ongoing.

## THIRD CAUSE OF ACTION

(Fifth Amendment – Equal Protection

Racial Discrimination)

11      74.    Plaintiffs repeat and incorporate by reference each allegation contained in
12  the preceding paragraphs as if fully set forth herein.

13      75.    The Fifth Amendment contains an implicit guarantee of equal protection
14  that invalidates any official action that reflects a racially discriminatory purpose.
15  Classifications based on race, ethnicity or national origin are subject to strict scrutiny,
16  and even facially neutral policies and practices will be held unconstitutional when they
17  reflect a pattern unexplainable on grounds other than racial discrimination.  *Bolling v.*
18  *Sharpe*, 347 U.S. 497, 499 (1954); *Village of Arlington Heights v. Metropolitan*
19  *Housing Development Corp.*, 429 U.S. 252, 265-66 (1977).

20      76.    By virtue of USPS' policy and practice of refusing to deliver mail
21  individually to SRO residents, while the USPS delivers mail individually to residents
22  of multi-unit "Apartment Houses," Defendants acted with improper discriminatory
23  intent and bias against non-white, African American residents of SROs, including
24  JENKINS.

25      77.    The USPS' policy and practice is unconstitutional because its
26  promulgation was motivated, at least in part, because of, and not merely in spite of, its
27  adverse effects on non-white, African American residents of SROs.  *Personnel*
28  *Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

- 16 -
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

78. Defendants promulgated this policy and practice of refusing to deliver mail individually to SRO residents with full knowledge that it would have a disproportionate impact on non-white, African American residents' ability to obtain their mail securely and in a timely manner.

79. Plaintiffs have suffered, and will continue to suffer, irreparable injury resulting from the USPS' unconstitutional policy and practice.

## FOURTH CAUSE OF ACTION

(Equitable Indemnity)

80. Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

81. In the event that AHF must pay a judgment or a settlement to Davis and/or other Madison tenants in the *Davis* class action case, the USPS must indemnify AHF equitably.

82. The USPS's unjustifiable refusal to deliver mail to individual Madison residents is in contravention of 39 U.S.C. § 101(e), the USPS POM, as well as the California Legislature's enactment of Health and Safety Code section 17958.3. At the Madison, mail does not go directly from the USPS to a locked mailbox for the intended recipient of the mail. A Madison employee still has to touch each piece of mail, to make sure that it gets to its intended recipient. A Madison tenant who experiences a mail problem can attempt, and through the *Davis* class action case already has attempted, to blame AHF for the problem. Any such potential liability traces back to, and is proximately caused by, the USPS's refusal to distribute the mail to individual Madison residents.

83. To the extent that any potential liability is imposed or any potential damages are assessed against AHF in the *Davis* class action case for any mail problems at the Madison, Defendants are at fault for any harm suffered and deserve to bear all or some of the liability and to pay the associated damages.

///

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(A) Declare that the USPS's current policy of single-bundle mail delivery to SRO properties instead of each tenant's lockable mailbox is invalid as unreasonable, arbitrary, capricious, and in violation of law;

(B) Enjoin Defendants from continuing to treat SROs differently and worse than multi-unit apartment buildings;

(C) Establish policies to ensure the USPS treats SROs and multi-unit apartment buildings the same, including delivering mail individually to SRO residents;

(D) For the payment by Defendants of any and all damages, and satisfaction of any and all liability, imposed on AHF in the *Davis* class action case arising from USPS's unjustifiable refusal to deliver mail to individual Madison residents; and

(E) Grant such other relief as this Court may deem just and proper.

DATED: February 1, 2024       By: /s/ Jonathan M. Eisenberg
                                                        Thomas A. Myers
                                                        Jonathan M. Eisenberg
                                             Attorneys for Plaintiff
                                             SHAWN JENKINS and AIDS HEALTHCARE FOUNDATION